| | | |
|---|---|---|
| **EDDY CLARK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 4:07CV2027SNLJ** |
| | ) | |
| **MATTHEWS INTERNATIONAL CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## <u>MEMORANDUM</u>

Plaintiff has brought this two-count age discrimination lawsuit pursuant to the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 *et. seq.*, and the Missouri Human Rights Act (MHRA), §213.010 *et. seq.* Essentially, plaintiff alleges that he, along with unidentified others of like or similar age, were routinely denied job-related training whereas younger employees were provided said training. He further alleges that he was ultimately terminated from his job in the defendant's St. Louis facility Art Department as part of a January 31, 2007 RIF[1] because he lacked the training that had been provided to the younger employees in the Art Department. Finally, he alleges that his supervisor, Randy Peek, made derogatory age-related comments to him. This matter is before the Court on the defendant's motion for summary judgment [51], filed July 1, 2009; and the plaintiff's motion to strike Matthews' motion for summary judgment, and motion in limine [53], filed July 21, 2009. Extensive responsive pleadings have now all been filed and the motions are ripe for disposition.

Before addressing the summary judgment motion, the Court will address the plaintiff's motion to strike and in limine [53]. Plaintiff seeks to strike the summary judgment motion, the

---

[1]reduction-in-force

defendant's statement of uncontroverted material facts, and the affidavit of Deena Zadylack because 1) these documents cite to "facts" relating to the 2006 RIF; and 2) Ms. Zadylack, in response to questioning, provided limited information regarding the 2006 RIF. Plaintiff contends that the defendant consistently refused to provide information to plaintiff regarding RIFs prior to the 2007 RIF and that this Court has entered two (2) orders limiting discovery to the 2007 RIF. Plaintiff contends that defendant should now be prevented from presenting any evidence or legal argument regarding the 2006 RIF. Defendant contends that plaintiff is not prejudiced in any manner because it has provided plaintiff with complete employee information and personnel records of all employees terminated in both the 2006 and 2007 RIFs. Defendant further argues that neither of the plaintiff's discovery motions put the 2006 RIF at issue, and therefore, the Court's orders did not preclude the defendant from introducing evidence regarding the 2006 RIF.

The Court has carefully reviewed (again) the plaintiff's discovery motions [18 and 30], the Court's Orders [37 and 38], and the instant pleadings. The Court finds that the issue of the 2006 RIF was never put before this Court as a discovery dispute. Firstly, the issue was whether defendant was obligated to provide information regarding RIFs **after January 1, 2007**. Secondly, defendant had already provided substantial information to the plaintiff regarding the 2006 and 2007 RIFs and consistently only objected to providing information regarding RIFs prior to 2006 and after 2007. The Court's orders simply reiterated that defendant had provided the relevant discovery pertaining to the 2007 RIF and was not obligated to provide any additional discovery.

The Court further notes that the evidence pertaining to the 2006 RIF is simply "background" information as to names, birthdates, ages at time of the RIF of fellow employees. This type of information has been found to be relevant when considering whether plaintiff was

chosen for the 2007 RIF based on age. Evidence that a plaintiff has survived earlier reductions in force in which younger employees were terminated is relevant in an ADEA-RIF case. *See*, Langlie v. Onan Corp., 192 F.3d. 1137, 1140 (8th Cir. 1999). The Court will consider this evidence as "background" information, and give whatever weight the Court deems necessary to it. Plaintiff is not prejudiced by this evidence since he has had possession of this information throughout this litigation. The motion to strike, and in limine will be denied.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56©, a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986);

Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Although summary judgment should seldom be granted in employment discrimination cases, it is proper in those cases wherein the plaintiff fails to establish a factual dispute on an essential element of the case. Snow v. Ridgeview Medical Center, 128 F.3d. 1201, 1205 (8th Cir. 1997), citing Bialas v. Greyhound Lines, Inc., 59 F.3d. 759, 762 (8th Cir. 1995). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Sys., Inc., 221 F.3d. 1053, 1055 (8th Cir. 2000)(citations omitted). The Eighth Circuit has "repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based. Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); see, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) citing Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Systems,

Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

Although the Court is required to view the facts in the light most favorable to the non-moving party, it should not accept "unreasonable inferences or sheer speculation as fact.". Howard v. Columbia Public School District, et. al., 363 F.3d. 797, 800 (8th Cir. 2004). A plaintiff may not "simply point to allegations made in [her] complaint but must identify and provide evidence of `specific facts creating a triable controversy." Howard, at 800 *quoting* Jaurequi v. Carter Manufacturing Co., 173 F.3d. 1076, 1085 (8th Cir. 1999). Furthermore, a plaintiff may not simply provide a massive record expecting the Court to sift through it in an effort to find support for the plaintiff's allegations. Howard, at 800-01 (citations omitted). The Court is only obligated to consider "admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions in fact.". Howard, at 801 *citing* Shaver v. Independent Stave Co., 350 F.3d. 716, 723 (8th Cir. 2003).

The Court finds the following facts not in dispute or resolved by the Court based upon the record before it. The following facts are those established by the depositions, affidavits, and records submitted by the parties, and are viewed in the light most favorable to the non-movant (plaintiff).

Plaintiff is a sixty (60) year old electronic graphics artist who was terminated from his employment with defendant as the result of a RIF on or about January 31, 2007. At the time of his termination plaintiff was fifty-seven (57) years old. Defendant Matthews International Corp.

(hereinafter referred to as "Matthews") is a Pennsylvania corporation with its principal place of business in Pennsylvania and with plant facilities/offices both within and outside Missouri. Defendant runs a division that does printing and primary packaging nationwide.

Plaintiff began his employment with defendant on or about May 18, 1992 at the age of 43. At all times relevant, plaintiff was employed in defendant's St. Louis facility. Plaintiff did primarily "basic corrugated" work (also referred to as "warehouse" packaging) which consisted of one to two color artwork according to the basic layout design or the layout requested by a customer. He prepared his artwork through the aid of a computer for printing on cardboard packaging. He occasionally did multi-color artwork ( artwork utilizing up to ten colors); however, multicolor artwork (or "trapping") was not his primary work responsibility.

In 2000, Randall Peek was hired by defendant as the Production Manager for defendant's St. Louis facility. At that time, defendant was actively attempting to gain a market in the primary packaging industry.[2] The corrugated artwork market was shrinking and defendant's profit margins in this area were getting smaller. Defendant was turning its attention more to primary packaging artwork because of the higher revenue for such artwork, and viewed this area of the industry as a growth opportunity. Mr. Peek had experience in the primary packaging industry which defendant felt was needed in the St. Louis facility.

When Peek came to Matthews in 2000, he divided the Art Department into three (3) self-directed work groups, with each group primarily assigned a different level of artwork. The three (3) work groups were called the Blue Team, the Red Team, and the Purple Team. The Blue Team was primarily responsible for basic one to two color corrugated artwork. Initially, the Blue

---

[2]Primary packaging is the packaging that a consumer sees as opposed to corrugated packaging, which is used for shipping and storage.

Team consisted of plaintiff, Tom Foster (1946[3]), and Lynn Oder (1965). The Red Team was primarily responsible for intermediate level corrugated artwork, and initially consisted of Bob Follis (1950), Lillian Spruill (1957), and Gene Otte (1969). The Purple Team was primarily responsible for multi-color primary packaging artwork which utilized ArtPro trapping software. The Purple Team initially consisted of Jane Willerding (1972), Anthony Snider (1973), and Mike Deloff (1963). Prior to Peek's arrival in 2000, these individuals had received training on the ArtPro trapping software.

Some employees moved from team to team after the initial make-up of the teams. Sometime after 2000, the following employees were on the Purple Team doing primary packaging artwork: Ms. Willerding, Mr. Otte, James Hoef (1974), James Morrison (1960), Eric Nischbach (1971), and Cindy Prinster (1965). Then, at some later point in time, Ms. Prinster (who had been the Purple Team leader) became the Red Team Leader, and Mr. Otte (who had been the Red Team Leader) became the Purple Team Leader. Eventually, Mr. Morrison became the Purple Team Leader.

At all relevant times, defendant provided plaintiff with Macintosh training, Illustrator Macintosh training, and Quark training. Plaintiff had Trap-X software on his computer for two-color trapping and received Trap-X training. ArtPro trapping software is not necessary for one to two color corrugated artwork.

Employees who primarily did multi-color primary packaging artwork had the ArtPro software on their computers. Due to the expensive seat license for the ArtPro software, it was

---

[3]The parties have elected to redact the exact date of birth (DOB) for each individual identified in the pleadings. Instead, only the year of birth is noted. Therefore, the Court will note the year of birth for these individuals.

only installed on the computers utilized for multi-color primary packaging artwork on a regular basis. Only the members of the Purple Team had the ArtPro software on their computers.

All the artists had computers with at least one (1) gig of RAM. Requests for a new computer were evaluated on an individual basis according to need in connection with the type of artwork being performed. Complaints of slow computers, computers "freezing up", and other assorted computer-related problems were commonplace among all the artists. The ArtPro software required the computers with the most amount of memory and the highest processing speed. The primary packaging artwork also required the use of two computer screens so that the Purple Team members did not have to switch back and forth between applications and additional software packages needed for the primary packaging artwork projects. The Purple Team computers also had PhotoShop software on them. Plaintiff's computer did not have PhotoShop software on it. Although plaintiff believed PhotoShop software would have enabled him to do some jobs faster, he was able to do these same jobs using the Illustrator program on his computer.

Whenever members of the other teams needed to work on a "faster" computer, Peek gave permission for use of the Purple Team computers. He told artists to use, when necessary, Hoef's computer because he was on the second shift and his computer was unused during the day. Although this was allowed, some artists, including the plaintiff, believed that this was not an efficient use of computers.

Mr. Hoef and Ms. Willerding received formal ArtPro training from the software provider. Mr. Hoef received the training because he was a second shift artist and needed to be able to work independently. Ms. Willerding was the defendant's Trainer and received formal training on ArtPro so that she could train other employees. Only those employees on the Purple Team doing primary packaging artwork had formal ArtPro training. ArtPro software was not necessary to do

one to two color corrugated packaging artwork; therefore, training was not provided to employees on the other teams, including the plaintiff.

After Peek came to defendant's St. Louis facility, he told plaintiff that Matthews was cutting its quoted times for completing artwork, and was encouraging all employees to complete their jobs faster. Plaintiff's 2002 job performance review indicated that he did not meet the standards for quantity of work. Peek informed plaintiff that he was not getting enough work out and needed to improve the quantity of his work. Peek further informed plaintiff that he needed to become more proficient on VIP orders. Plaintiff's 2002 review also indicated that he needed to reduce the number of "escapes;" i.e., jobs going out with errors. In 2003-04, Peek began to cut the quote times for jobs and told the artists that he was raising the bar for performance. He specifically spoke with Tom Foster and plaintiff regarding the amount of time it took them to complete their jobs. Plaintiff believed that his inability to complete jobs in a more timely manner was due to his computer running slowly.

On May 25, 2004, plaintiff received a Employee Conference Form from Peek. The Employee Conference Form indicated that plaintiff needed to reduce his errors and improve his work time. Mr. Peek informed plaintiff that he needed to reduce his errors and improve his work time or the next step would be a written warning. He suggested to plaintiff different ways to do his work quicker but plaintiff rejected these suggestions.

On his July 26, 2006 job performance review, Peek rated the plaintiff as "does not meet standards" for productivity. Mr. Peek indicated that plaintiff needed to increase his organization and efficiency on the computer. Plaintiff believed he was being penalized on this review because of a dispute he had with Peek over plaintiff working on more than one artwork project at a time. Peek had told plaintiff, Foster, Hoef, and Oder that he preferred them working on one artwork

project at a time; however, plaintiff believed that he was capable of working on more than one project at a time. Peek believed that plaintiff, in particular, seemed to get "lost" when he was working on more than one artwork project at a time and that he would ultimately end his shift with several jobs started but none of them completed.

Matthews had a Reduction-In-Force policy in place during the relevant timeperiod. Defendant would consider the general sales level of a location, profitability within a location, and general business conditions when determining whether a reduction-in-force would occur. For layoffs, Matthews would determine the number of employees to be affected, review the skill sets of the employees in the affected departments, review the work to be performed, and select the employees to be terminated based upon the fit between the employee skill set and the work to be performed.

In past reduction-in-force years affecting the St. Louis facility, Peek and Kerry Beaver (defendant's Vice-President of Operations at the St. Louis facility) first would decide the number of employees that needed to be reduced. Then, they would decide what skills and abilities they would need with a reduced staff. Finally, they would submit to the Human Resources Department a recommended list of employees selected for the reduction-in-force. A final list would be reviewed by Deena Zadylak, (defendant's Regional Human Resources Manager in 2006-07). She would look at the jobs selected for layoff, and compare the persons on the reduction-in-force list with other persons not selected for layoff. She would compare their performances, as well as review any additional information in their personnel files such as disciplinary action or notes from a manager to make sure that only permissible job factors (performance, ability and job knowledge) were utilized in selecting people for reduction-in-force.

In the Art Department, the overall type of client artwork was becoming more complex. The corrugated artwork market was becoming less profitable. Defendant's clients' products were requiring more complicated, multicolor artwork. Defendant considered the primary packaging artwork to be its future.

In 2006, Matthews had a reduction-in-force at the St. Louis facility, terminating the following employees:

> Vicki Bates (1950)
> Jacob Lutz (1966)
> Jacqueline Steed (1960)
> Jason Pickens (1974)
> Lynn Oder (1965)
> Gary Smith (1942)

In January 2007, Matthews had another reduction-in-force at the St. Louis facility in the Graphics Division, terminating the following employees[4]:

> Eddy Clark (1949)
> John Hardy (1958)
> Janet Koprek (1956)
> Tom Foster (1946)
> Steve Anderson (1955)
> Don Barton (1959)
> William Styles (1953)
> James Morrison (1960)

The initial list for the 2007 RIF was sent by Mr. Beaver to Ms. Zadylak on or about January 10, 2007. This initial list did not have the plaintiff on it, but it had Eric Nischbach (1971) on it as opposed to James Morrison. Moreover, Mr. Beaver informed Ms. Zadylak that one additional employee was still to be determined for the list.

---

[4]In his pleadings, plaintiff also lists James Runge as one of the employees selected for the 2007 RIF. It is unclear from the parties' exhibits whether Mr. Runge was a member of the Art Department, or simply was a Customer Service Representative in the Graphics Division.

Between January 14-19, 2007 this list was revised to add the plaintiff and replace Nischbach with Morrison. Peek determined that plaintiff would be added to the list because he believed that plaintiff lacked the skill and ability to meet the needs of a reduced Art Department. Peek indicated that the demand for basic corrugated artwork was decreasing and that plaintiff's limited skill set precluded him from moving on to the more complex work being done by others on primary packaging art projects. Beaver informed Zadylak that Nischbach was taken off the list and replaced with Morrison because Nischbach had image processing experience and could do primary packaging work whereas Morrison could not and had the least experience with the company.

Zadylak reviewed the list comparing the employees selected for the reduction-in-force with employees not selected, especially if they held the same job. She reviewed their personnel files to ensure that job factors were being used as the sole factor in choosing an employee for a reduction-in-force. Furthermore, she reviewed employees' performance reviews for the prior two years, 2005 and 2006.

Peek and Beaver recommended Foster, Styles and Anderson for the 2007 RIF because their skills and abilities to perform the work after the RIF were lower than other employees. They chose Barton for the 2007 RIF because his skills and abilities were lower than other employees, and he was the last employee hired. Mr. Hardy was chosen because his position (Color Specialist) was one of three combined into one position filled by Brian Willsey (1966) who was located in defendant's Pittsburgh facility. Ms. Koprek's position (Computer Graphics System Administrator) was eliminated and was also one of the three positions now being fulfilled by Willsey.

After the January 31, 2007 RIF, Matthews retained the following employees in the

Graphics Division:

Jane Willerding (1972)
James Hoef (1974)
Jennifer Mersinger (1974)
Eric Nischbach (1971)
Jeff Burris (1970)
Gene Otte (1969)
Kenneth Tinker (1969)
Bob Follis (1950)
Lillian Spruill (1957)
Michael Blakeney (1956)
Mark Slater (1956)
Michael Thornsberry (1962)
Michael Deloff (1963)
Cindy Prinster (1965)
Duane Marburger (1966)
Charles Penn (1959)
Susan Bobe (1966)

During his tenure of employment, plaintiff alleges that Peek made two (2) comments

which he believes demonstrates an age bias. Peek denies making these statements. Firstly,

plaintiff alleges that on or about January 26, 2007 Peek made a non-specific comment "about just

making it to retirement"[5] to him in passing. Plaintiff further alleges that during an unidentified in

time "smoke break" Peek made a similar statement to Tom Foster.[6] Plaintiff cannot recall any

statements by Beaver which he believed demonstrated an age bias. At no time during his

employment with Matthews did plaintiff ever complain to Human Resources or Peek's

supervisor(s) about Peek's actions or any alleged statements demonstrating an age bias.

---

[5]Plaintiff's Exhibit 7 - Plaintiff's Deposition, pg. 110.

[6]Plaintiff's Deposition, pgs. 111-12; Plaintiff's Exhibit 8 - Deposition of Tom Foster, pgs. 91-92. Although plaintiff asserts that Peek said something to Foster about "helping him make it to retirement"; Foster only asserts that during a conversation about a variety of topics Peek suddenly told Foster that "he could always get a job at Wal-Mart as a greeter."

Before addressing the legal issues present before the Court, it is necessary for the Court to address the matter of plaintiff's Exhibit 6 and plaintiff's Exhibit 14. Plaintiff's Exhibit 6 is a chart apparently drafted by plaintiff's co-worker Janet Koprek which reportedly provides the names and ages of employees at the St. Louis facility. It furthermore purports to show which of these employees were subject to the 2007 RIF. Plaintiff relies on this chart exclusively to show:

> "7. At the time of the January 2007 RIF, there were 35 non-management employees listed in the Matthews St. Louis office. Twenty were over 45 years of age. Fifteen were under said age. (Koprek dep. Exh. 11, p. 109, Ln. 11 to p. 112, Ln 9, referencing Exhibit U, attached hereto as Exhibit 6).
>
> 8. On January 31, 2007, *nine* employees over 45 years of age were discharged. (Ex. 6, Ex. 1, Ex. 14). The following are the names and ages of the employees terminated:
>
> Ed Clark, age 57, born 9/15/49
> Jim Runge, age 52, born 10/25/55
> Tom Foster, age 60, born 8/20/46
> John Hardy, age 49, born 3/17/58
> Jim Morrison, age 47, born 9/5/60
> Donald Barton, age 47, born 9/22/59
> Jan Koprek, age 51, born 5/27/56
> Ron Styles, age 54, born 9/27/53
> Steve Anderson, age 52, born 4/25/55
> (Def. Statement of Facts, ¶¶1 and 132; Ex. 8 from Zadylak Depo., Ex. 12, p. 191 to p. 200, attached hereto as Exhibits 1-3; Zadylak testimony, p. 194, Ln. 13-16, re: Ex. 2 and p. 196 Ln.22 to p. 197, Ln. 3; and Koprek dep. Ex. 11, p. 109, Ln. 11 to p. 112, Ln 9, Ex. 6; Ex. 14).
>
> 9. Not a single employee under the age of 45 was terminated from the St. Louis office in the January 2007 RIF. (Ex. 1; Ex. 2; Koprek dep. Ex. 11, p. 109, Ln. 11 to p. 112, Ln. 9, Ex. 6; Ex. 14).
>
> 10. Further, eight employees in the Matthews St. Louis office were under the age of 40. (Ex. 6). All employees under the age of 40 were retained during the January 2007 RIF."

Plaintiff's Statement of Uncontroverted Facts [55-2], pgs. 2-3.

There are several problems with this exhibit which precludes it from being considered by the Court. Firstly, there is no accompanying affidavit or any attestation by the creator of this document (presumably Ms. Koprek) which provides any means of authentication of it. There is no attestation as to where these names and personal information was obtained. Secondly, plaintiff offers this exhibit as the sole source of his "statistical evidence" to support his discrimination claim(s). There is nothing before this Court which indicates that Ms. Koprek has been identified as an expert witness either in statistics or in the field of corporate human resources. Ms. Koprek has testified that her highest level of education is a GED and she has completed only two (2) years of high school. At the time of the 2007 RIF, Ms. Koprek was defendant's Computer Graphics System Administrator.

More importantly, the chart lists incorrect ages for numerous persons including plaintiff Clark, Hoef, Mersinger, Crocker, Burris, Loos, Prinster, Deloff, Otte, Marburger, Runge, Slater, Barton, Styles, Anderson, and Martinez.[7] These same errors are repeated on page 2 of Ms. Koprek's chart. A few insignificant factual errors in a document would not normally merit great attention by the Court on a summary judgment motion; however, Ms. Koprek's chart has numerous errors which are highly significant to the issues herein. Furthermore, her own deposition testimony completely undermines any reliable foundation for the "data" she has put in this chart and on which plaintiff primarily relies upon in his case. Ms. Koprek's source for the "data" on her chart is not personnel files/employee files or any type of objective source; instead,

---

[7]The correct ages are: Clark (57), Hoef (33), Mersinger (33), Crocker (51), Burris (37), Loos (41), Prinster (42), Deloff (41), Otte (38), Marburger (41), Runge (52), Slater (51), Barton (48), Styles (54), Anderson (52), and Martinez (44). Defendant's Exhibit S - Answers to Interrogatories, MIC-EDC3309-3310 (personnel records).

her source appears to be nothing more than her memory based upon casual conversation and attending birthday parties.  Defendant's Exhibit N - Deposition of Janet Koprek, pgs. 109-112.

Furthermore, Ms. Koprek's chart which purports to show "Matthews STL demographic" omits employees who were employed in St. Louis at the time of the 2007 RIF, including Ricky Butts (46), Albert Cooper (58), Andrew Jones (40), James Jenkins (45), and Joseph Robles (42). Defendant's Exhibit S. Thus, significantly, Ms. Koprek's chart omits five (5) employees age 40 or older who survived the 2007 RIF.

Given the significant factual errors in Ms. Koprek's chart, the significant lack of indicia of reliability, and the significant lack of any authentication by affidavit or otherwise, the Court finds Plaintiff's Exhibit 6 to be inadmissible for failing to meet the requirements of Rule 56(e) Fed.R.Civ.P.  *See*, <u>Cummings v. Roberts</u>, 628 F.2d. 1065, 1068 (8th Cir. 1980); <u>Casey v. Riedel, et. al.</u>, 195 F.Supp.2d. 1122, 1133, n.2 (S.D.Iowa 2002) *citing* <u>Cummings</u>, *supra.*; <u>Anderson v. Dillard's, Inc,.</u>, 109 F.Supp.2d. 1116, 1121 (E.D.Mo. 2000).

As for the plaintiff's affidavit, it too suffers from fatal flaws.  Plaintiff essentially incorporates Ms. Koprek's "data" into his affidavit, then draws legal conclusions as to the affect of this factually incorrect data; i.e., "Matthews had 54% of its artists over the protected age of 40 prior to the January 2007 RIF, and only 25% of its artists were over 40 after the January 2007 RIF".  Plaintiff's Exhibit 14 - Plaintiff's Affidavit.  Furthermore, because his affidavit reiterates the incorrect ages for a number of persons, he erroneously attests that defendant retained eight (8) employees under 40 when in fact it had retained seven (7) employees under the age of 40.  This is significant because plaintiff's wholesale use of Ms. Koprek's factually erroneous chart demonstrates that his attestations are not of "personal knowledge" and furthermore, are based on hearsay statements (Ms. Koprek's chart which is based on information she obtained by talking to

others and attending birthday parties). Thus, plaintiff's statements regarding the "data" shown on Ms. Koprek's chart, and drawing conclusions from that data will not be considered by this Court in addressing the merits of the summary judgment motion. *See*, Rule 56(e)(1) Fed.R.Civ.P.; Halbach v. Great-Western Life & Annuity Ins. Co., 522 F.Supp.2d. 1154, 1160-1162 (E.D.Mo. 2007) *aff'd in part and rev'd in part on other grounds*, 561 F.3d. 872 (8th Cir. 2009).

Furthermore, plaintiff's affidavit contains certain "self-serving" statements; e.g., "[A]t all times prior to my termination from Matthews, I was an exemplary employee who displayed a good work ethic, diligence and focus on my tasks, and who had a good attendance rate, a low error rate, and high quality production." Plaintiff's Affidavit. Such "self-serving" statements in an affidavit are not legally sufficient to properly challenge a summary judgment motion. *See*, Bacon v. Hennepin County Medical Center, 550 Fl.3d. 711, 716 (8th Cir. 2008). Such statements will not be considered by the Court in addressing the merits of the summary judgment motion.

Under these circumstances, the Court will not strike the plaintiff's affidavit as being inadmissible; however, the Court will not consider evidence which is not based upon personal knowledge, is based upon hearsay statements, and/or is little more than "self-serving" statements. Those portions of the plaintiff's affidavit based upon the foregoing will be excluded from evidence before this Court.

## PLAINTIFF'S ADEA-RIF DISPARATE IMPACT CLAIM

In his response to the defendant's summary judgment motion, plaintiff apparently now asserts that he is bringing an ADEA disparate impact claim. After careful consideration of the matter, the Court determines that plaintiff has failed to set forth a *prima facie* case of an appropriate ADEA disparate impact claim in this RIF case.

To establish a *prima facie* case of disparate impact under the ADEA, the plaintiff must identify a specific employment practice and then present statistical evidence of a kind and degree sufficient to show that the practice in question caused the plaintiff to suffer an adverse employment action because of his/her age.  Equal Employment Opportunity Commission v. Allstate Ins. Co., 528 F.3d. 1042, 1049 (8th Cir. 2008); Evers v. Alliant Techsystems, Inc., 241 F.3d. 948, 953-54 (8th Cir. 2001).  A plaintiff falls short by merely alleging a disparate impact, or "point[ing] to a generalized policy that leads to such an impact.  Meacham, et.al. v. Knolls Atomic Power Laboratory, aka KAPL, Inc., - U.S. -, 128 S.Ct. 2395, 2405 (2008) *quoting* Smith v. City of Jackson, Mississippi, 544 U.S. 228, 241 (2005).  The plaintiff must isolate and identify the **specific** employment practice(s) that are allegedly responsible for the asserted statistical disparities.  Meacham v. Knolls Atomic Power Laboratory, 128 S.Ct. at 2405-06; City of Jackson, 544 U.S. at 241 (emphasis added).  The reason for the requirement to isolate and identify a specific employment policy or practice is to avoid the "result [of] employers being potentially liable for `the myriad of innocent causes that may lead to statistical imbalances.'" Meacham v. Knolls Atomic Power Laboratory, 128 S.Ct. at 2406 *quoting* City of Jackson, 544 U.S. at 241 (*citing* Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989)). Identifying a specific practice is "not a trivial burden".  Meacham, 128 S.Ct. at 2406.

In the present case, plaintiff has pleaded:

> "Matthews violated the Age Discrimination in Employment
> Act of 1967 by systematically denying Clark and other like
> aged employees training opportunities given employees not
> in the protected group; by subjecting Clark and other like
> aged employees to a series of derogatory comments based
> on Clark's age, and by terminating Clark and other like
> aged employees because of their age."

Plaintiff's Complaint, ¶14. Plaintiff is clearly alleging that defendant acted expressly on the basis of age, and not because a specifically identified facially neutral policy had an adverse impact on older employees. Throughout his pleadings, plaintiff takes umbrage with certain employment decisions made; i.e.; computers, software, project distribution. However, he fails to identify a specific employment policy in place which impacted employees over the age of 40 disproportionately. He further disputes the application of the RIF Guidelines, especially to him, but he doesn't challenge the RIF Guidelines as being discriminatory in and of themselves with respect to age. His challenges to the summary judgment motion refer to defendant's RIF decisions, but not to any specific policy in place that impacted disproportionately on the basis of age. *See*, Langlie v. Onan Corp., at 1140. In short, he has improperly attempted to recast a disparate treatment claim to establish a disparate impact claim. Scheidecker v. Arvig Enterprises, Inc., 122 F.Supp.2d. 1031, 1044 (D.Minn. 2000). He has failed to identify a "specific test, requirement, or practice" that has an adverse impact on older workers, and thus, has failed to set forth his *prima facie* case of ADEA disparate impact. City of Jackson, 544 U.S. at 241.

Furthermore, there is the question of his "statistical evidence". To establish disparate impact, the statistical evidence offered must be of the kind and degree "sufficient to show that the practice in question caused" the plaintiff to suffer an adverse employment action. EEOC v. Allstate Ins. Co., 528 F.3d. at 1049 *quoting* Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 994-95 (1988); Evers, at 983; Langlie, at 1140. Although the Supreme Court "has not framed these statistical formulations in rigid mathematical terms, the Court has `consistently stressed that statistical disparities must be sufficiently substantial that they raise such an inference of causation.'" EEOC v. Allstate Ins. Co., at 1049 *quoting* Watson v. Fort Worth Bank & Trust, 487 U.S. at 995. As stated earlier, for a variety of reasons, the Court has determined that the,

plaintiff's "statistical evidence" based upon Ms. Koprek's chart will not be considered by the Court.

Moreover, the plaintiff's "statistical evidence" and his pleadings consistently focus on employees over the age of 45, rather than over the age of 40. The ADEA forbids discrimination in the workplace against employees over the age of 40. 29 U.S.C. §631(a). Disparate impact claims on behalf of subgroups (of age) are not cognizable under the ADEA. EEOC v. McDonald-Douglas Corp., 191 F.3d. 948, 951 (8th Cir. 1999) *aff'g* 969 F.Supp. 1221 (E.D.Mo. 1997). Thus, the only relevant evidence and analysis is on employees age forty (40) and older.

Furthermore, plaintiff not only focuses his attention and his "statistical evidence" on employees age forty-five (45) and older, but also it appears that he limits his analysis to his Art Department, as opposed to the Graphics Division as a whole in the St. Louis facility. The entire Graphics Division consisted of six (6) large facilities, of which St. Louis was one. Zadylak Deposition, pgs. 18-20. The January 2007 RIF was targeted to four (4) of these facilities, one of which was St. Louis. Beaver Deposition, pg. 69. Thus, the entire Graphics Division in the St. Louis location was subject to the January 2007 RIF. Beaver Deposition, pg. 40. Statistical evidence "is meaningless without some analysis of the age of the entire workforce . . . before and after the reduction in force. Stidham v. Minnesota Mining and Manufacturing, Inc., 399 F.3d. 935, 938 (8th Cir. 2005) *quoting* Chambers v. Metro. Prop. & Cas. Ins. Co., 351 F.3d. 848,m 856 (8th Cir. 2003); Dechman v. Stahl Specialty Co., 538 F.Supp.2d. 1153, 1161 (W.D.Mo. 2008) *citing* Stidham, *supra.* The relevant workforce in a RIF situation consists of workers subject to termination. Johnson v. Deloitte & Touche, LLP, 2008 WL 2331578, *5 (D.Minn. 2008) *citing* Smith v. Xerox Corp., 196 F.3d. 358, 368 (2nd. Cir. 1999).

According to Defendant's Exhibit S consisting of St. Louis Employees List, MIC-EDC3309-3310, as of January 31, 2007 there were forty-two (42) identified non-management employees.[8] Of this number, thirty-five (35) were age 40 or older; seven (7) were age 39 or younger. Therefore, the majority of the employees (83%) were age 40 or older prior to the RIF. Pursuant to the January 2007 RIF, nine (9) employees were terminated, and all 9 were age 40 or over. On paper, this is significant because it constitutes 100% of terminated employees were age 40 or older. However, post-January 2007 RIF, thirty-three (33) employees were retained. Of this number, twenty-six (26) employees were age 40 or older; seven were age 39 or younger. Thus, approximately 79% remained who were age 40 or older. Of these 26 employees age 40 or older, ten (10) were in the Art Department. These numbers do not reflect a statistically significant change in the Graphic Division or even the Art Department raising an inference that the January 2007 RIF resulted in an adverse impact on older workers.

Plaintiff has failed to establish a *prima facie* case for an ADEA-RIF disparate impact claim.[9]

## PLAINTIFF'S ADEA-RIF DISPARATE TREATMENT CLAIM

Under the ADEA, it is unlawful for an employer to "fail to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. §623(a)(1). Recently, the United States Supreme Court held that the burden-shifting

---

[8]Although neither of the parties makes it clear, the Court will presume that this list represents the Graphics Division in St. Louis.

[9]For purposes of this opinion, the Court's factual and legal findings are equally applicable to plaintiff's MHRA age disparate impact claim (assuming that plaintiff is also now asserting such a claim).

framework of Price-Waterhouse v. Hopkins, 490 U.S. 228 (1989) was inapplicable in ADEA

cases. Gross v. FBL Financial Services, Inc., - U.S. -, 129 S.Ct. 2343 (2009). The Court stated:

> "We hold that a plaintiff bringing a disparate-treatment claim
> pursuant to the ADEA must prove, by a preponderance of the
> evidence, that age was the `but-for' cause of the challenged
> adverse employment action. The burden of persuasion does
> not shift to the employer to show that it would have taken the
> action regardless of age, even when a plaintiff has produced
> some evidence that age was one motivating factor in the
> decision."

Gross, 129 S.Ct. at 2352. There is no "heightened evidentiary requirement" for plaintiffs to

satisfy their burden of persuasion regardless of whether the plaintiff's evidence is direct or

circumstantial. Gross, 129 S.Ct. at 2351. "A plaintiff must prove by a preponderance of the

evidence (which may be direct or circumstantial), that age was the `but-for' cause of the

challenged employer decision." Gross, 129 S.Ct. at 2351. Although the Court made clear that

the burden-shifting framework of Price-Waterhouse, *supra.* was not applicable in ADEA cases; it

left open the question as to the applicability of the burden-shifting framework of McDonnell

Douglas Corp. v. Green, 411 U.S. 792 (1973) to ADEA cases. In addressing Justice Stevens

argument that the Court should continue to incorporate past interpretations of Title VII into the

ADEA, the Court, after noting the disparity of the Court's approach to interpreting the ADEA in

light of Title VII, stated that it had not "definitively decided whether the evidentiary framework of

*McDonnell Douglas Corp. v. Green,* 411 U.S. 9=792, 93 S.Ct. 1817, 36 L.Ed.2d. 668 (1973),

utilized in Title VII cases is appropriate in the ADEA context." Gross, 129 S.Ct. at 2349, n.2.

In a recent post-Gross ADEA case, the Eighth Circuit Court of Appeals continued the

apparent confusion of whether Gross sets the only standard by which an ADEA case may be

analyzed. In Baker v. Silver Oak Senior Living Management Co., 2009 WL 2914159 (8th Cir.

2009), the Eighth Circuit lays out the standard of review in an ADEA case as set forth by Gross.

However, because the parties apparently had argued the case under the burden-shifting framework of <u>McDonnell Douglas</u>, [10]the Court appears to have reviewed and analyzed the record before it using the <u>McDonnell Douglas</u> burden-shifting analysis.

In the present case, defendant has argued its motion regarding plaintiff's disparate treatment claim under both the burden-shifting framework of <u>McDonnell Douglas</u> and <u>Gross</u>' "but-for" standard. Plaintiff has clearly challenged the summary judgment motion based upon the "but-for" standard established in <u>Gross</u>. Plaintiff's Response [55], pg. 7. Thus, since both parties have briefed their positions assuming that the <u>Gross</u> "but-for" standard of review is applicable, and the Eighth Circuit Court of Appeals suggests that if not for the fact the <u>Baker</u> case had been submitted prior to the <u>Gross</u> decision it would have applied the <u>Gross</u> standard of review, the Court will apply the <u>Gross</u> "but-for" standard of review to plaintiff's ADEA-RIF disparate treatment claim.

Defendant contends that plaintiff was chosen for the 2007 RIF because of his comparatively lower skill sets and ability to perform the work that defendant was going forward with in the St. Louis facility. Plaintiff contends that he was initially placed on the Blue Team, denied "faster" computers, and denied training on computer software for "higher level" artwork, due to his age. He further contends that the implementation of the defendant's lay-off policy was not followed because of his age. Finally, he contends that age-related remarks were made to him or to others which indicate the defendant's age-bias, resulting in his termination.

When Peek was first hired in 2000, defendant was beginning to change its artwork focus from less basic corrugated artwork to more multi-color primary packaging artwork. As of 2000, plaintiff had not had training on the computer software utilized for the primary packaging artwork

---

[10]The Court notes that <u>Gross</u>, *supra.* was decided after the <u>Baker</u> case was submitted.

while others already had such training. Those placed on the Purple Team already had the training (prior to Peek's arrival). Those chosen to be team leaders were the persons who had the most experience with the accounts that were the focus accounts for each team. It is unrealistic to believe that a business decision made in 2000 was done so with the intent to place the plaintiff on a RIF list seven (7) years later. It is not the role of a court to sit as a "super-personnel department" to second guess the wisdom of a business' personnel decisions. Evers v. Alliant Techsystems, at 957 *citing* Hill v. St. Louis University, 123 F.3d. 1114, 1120 (8th Cir. 1997).

Furthermore, defendant was decreasing its quoted times for completing artwork and trying to encourage employees to complete their jobs faster. In 2002, plaintiff's evaluation indicated that he was not meeting standards for quantity of work; that he needed to become more proficient on VIP orders; and that he needed to reduce the number of escapes (work going out with mistakes). In 2004, plaintiff received an Employee Conference Form from Peek which again indicated that plaintiff needed to reduce his errors and improve his work time. In 2006, his last evaluation before the 2007 RIF, plaintiff was rated as "does not meet standards" for productivity and needed to increase his organization and efficiency on the computer. Plaintiff takes issue with Peek's evaluation of his skills but there is no evidence on the record that he ever contested the evaluations because he believed that they reflected an age-bias or that he ever told Peek that he believed he was being singled out due to his age. Even if plaintiff believed the evaluations did not correctly reflect his skills, it is not unlawful for a company to make personnel decisions based on erroneous evaluations. Evers, at 957 *citing* Hill v. St. Louis University, 123 F.3d. at 1120.

Plaintiff asserts that younger employees were given preferential treatment with regard to computers, software and training. Employees on the Purple Team doing primary packaging artwork had ArtPro software on their computers because such software was necessary for their

artwork; however, the ArtPro software was not necessary to do basic corrugated artwork. The ArtPro software had an expensive seat license. Only those employees on the primary packaging team received ArtPro training.

Plaintiff was on the Blue Team doing basic corrugated artwork which did not require use of the ArtPro software. No employee was trained on ArtPro unless they were on the Purple Team and placement on the Purple Team was based upon employee skill level and ability to perform more complex artwork. Peek believed that plaintiff had certain difficulties in doing his job at the basic corrugated artwork level and did not have the skill to do primary packaging work. Plaintiff contends that from time to time he would do more complicated artwork; however, even if Peek was mistaken in his belief that plaintiff was not capable of doing primary packaging artwork on a regular basis, such a mistaken belief is not unlawful.

The ArtPro software required installation on the computers with the most amount of memory and highest processing speed. The more highend artwork was dependent on the speed and capability of these computers. The slower computers were capable of doing the basic corrugated artwork and therefore were utilized by members of the Blue Team. All employees felt at one time or another that their computers were operating too slowly or kept "freezing up". Plaintiff was advised that he could use one of the "faster" computers whenever he needed to do so for his work but he preferred not to do so.

Plaintiff believes that he was a qualified artist that should have been doing primary packaging artwork on a faster computer with the ArtPro software. His evaluations show otherwise and he has not presented any affirmative evidence to show that Peek's evaluations were erroneous because of an age-bias.

Plaintiff also believes that he was singled out for errors and was deliberately told to work one job at a time in order to slow his productivity. Firstly, there is no evidence that Peek singled out plaintiff for error monitoring; in fact, several other "younger" artists were also given disciplinary warnings for errors. *See*, Plaintiff's Response [55], pgs. 20-21. Furthermore, plaintiff has provided no affirmative evidence, other than his own self-serving opinion, that his "error log" was treated less favorably than "younger" employees' "error logs" due to his age when the 2007 RIF list was contemplated. As for defendant deliberately undercutting plaintiff's productivity in order to create the impression of a less capable employee, such argument is meritless. Peek believed that plaintiff appeared to be "lost" when working on more than one project at a time, and ultimately would end up having none of them completed at the end of plaintiff's shift. Peek wanted all artists to work on one project at a time and conveyed this directive not only to plaintiff but to Hoef and Oder, both "younger" employees. Thus, this was a business decision not based on age.

Plaintiff next contends that defendant did not follow its lay-off policy when it chose him for the 2007 RIF, and that this diversion was based on plaintiff's age. He specifically avers that defendant failed to review his evaluations prior to its decision, and that defendant has not provided the reason for his selection on the list.

Matthews' lay-off policy provides that "[d]ocumented past performance records, job knowledge, skills for performing those jobs not eliminated, and ability are all important factors. When those factors are equal seniority within the cost center or department involved shall be the determining factor." Plaintiff's Exhibit 33. With regard to the 2007 RIF in St. Louis, Messrs. Beaver and Peek first determined the number of employees needed to be reduced and developed a recommended list of employees to be selected. This recommended list was then forwarded to Ms.

Zadylak in defendant's Human Resources department. In developing this recommended list, Beaver and Peek looked at the skills and abilities they would need to complete work with a reduced workforce. Peek was intimately familiar with plaintiff's skills and abilities given that he had evaluated plaintiff's job performance on a regular basis for a number of years prior to the 2007 RIF. Plaintiff has offered no affirmative evidence that Peek was not aware of his performance evaluations and had not considered these when making the recommended list.

Ms. Zadylak reviewed the recommended list. If there were employees not selected who were holding the same job as ones selected, she reviewed personnel files comparing performance and anything else in order to make sure that lawful job factors were used as the sole factors in choosing an employee for a reduction-in-force. She performed her review by looking at the employees' performance reviews for the prior two (2) years, 2005 and 2006.

Although Ms. Zadylak did not testify as to the specific reason(s) that plaintiff was placed on the recommended list, Beaver and Peek, the two (2) people who actually determined who would be placed on the recommended list, testified as to the reasons for the plaintiff's selection: his comparatively lower skills and ability to perform the work going forward. Plaintiff's immediate supervisors selected him for the 2007 RIF for job-related reasons and defendant's Human Resources personnel accepted his selection for the 2007 RIF. Plaintiff's contention that Beaver and Peek's testimony does "not bind or speak" for defendant is meritless.

Plaintiff also asserts that the fact that Eric Nischbach was originally on the 2007 RIF recommended list but was then replaced by Jim Morrison demonstrates age discrimination. Firstly, the fact that Nischbach was replaced by Morrison does not show that plaintiff was put on the list due to plaintiff's age. Furthermore, the evidence before the Court shows that Mr. Nischbach had image processing experience and could do primary packaging work whereas Mr.

Morrison did not have these skills. Plaintiff has offered no affirmative evidence to show that this was anything more than a business decision by Peek and Beaver to retain personnel who could do the increasing amount of primary packaging artwork despite a reduced workforce. Retaining the best employees for jobs remaining after a reduction-in-force is a legitimate business goal. *See*, <u>Evers</u>, at 954.

Defendant's management personnel's consideration of employee versatility was not inconsistent with its lay-off policy; and even if erroneous assessments of plaintiff's versatility or of his capabilities were made, such erroneous assumptions do not show that the decision to select him for the 2007 RIF was age-based. *See*, <u>Keating v. Harsco Corp.</u>, 109 Fed.Appx. 835, 836-37 (8th Cir. 2004).

Finally, plaintiff contends that certain remarks allegedly made by Peek are direct evidence of the defendant's age bias. Plaintiff's evidence is that Peek told him that he "was just trying to make it to retirement" and that on another occasion, Peek told Tom Foster that Foster "was just trying to make it retirement" and that if Foster did not make it to retirement "he could always get a job at Wal-Mart as a greeter".

Firstly, when Peek allegedly made the comment, plaintiff had already been selected for the 2007 RIF. The alleged remark made no mention of plaintiff's selection for the 2007 RIF or anything specific about his age. An employer may make reasonable inquiries into the retirement plans of an employee as long as such inquiries become so unnecessary and excessive as to become harassing. Thus, an isolated inquiry does not rise to the level of harassment nor can be considered as evidence of intentional age discrimination. <u>Montgomery v. John Deere & Co.</u>, 169 F.3d. 556, 560 (8th Cir. 1999); *see also*, <u>Sprenger v. Federal Home Loan Bank of Des Moines</u>, 253 F.3d. 1106, 1113 (8th Cir. 2001)(*citing* <u>Montgomery</u>, *supra.* and <u>Hill v. St. Louis University</u>; *supra.*);

Ziegler v. Beverly Enterprises-Minnesota, Inc., 133 F.3d. 671, 676 (8th Cir. 1998); Barket v. Nextira One, 72 Fed.Appx. 508, 510 (8th Cir. 2003); Berini v. Federal Reserve Bank of St. Louis, Eighth District, 420 F.Supp. 1030, 1039 (E.D.Mo. 2006); Wagner v. Geren, 2009 WL 2105680, *5 (D.Neb. 2009).

As for the remark allegedly made to Mr. Foster, Mr. Foster testified that no mention of retirement was made to him. He further testified that the comment was made in a joking manner (albeit that Mr. Foster did not find the remark funny). An isolated joking remark, standing alone, does not provide a sufficient basis for inferring age discrimination. *See*, Wagner v. Geren, at *5 *citing* Montgomery, *supra.*

Under Gross, *supra.*, Clark has the burden of persuasion to establish that age was the "but-for" cause of him being terminated as a result of the 2007 RIF. Gross, 129 S.Ct. at 2351. This burden is met by a preponderance of the evidence. At summary judgment, plaintiff Clark must show by a preponderance of the evidence that, after viewing all the evidence in a light most favorable to the plaintiff, there is a genuine issue of material fact that age was the "but-for" cause of plaintiff's lack of training, lack of receipt of certain computers and software, and ultimate termination of employment under the 2007 RIF. Plaintiff has failed to carry this burden.

Plaintiff's primary job was performing basic corrugated packaging artwork. This type of work did not necessitate the use of "faster" computers or the installation of expensive software such as ArtPro. Since plaintiff's work did not necessitate this type of computer imaging, there was no business reason to train him to use this software. Plaintiff's job performance evaluations showed certain deficiencies in his work output which led Mr. Peek to believe that plaintiff was not a good candidate for primary packaging artwork jobs. Plaintiff may have disagreed with the assessment of his abilities and capabilities but even erroneous assessments of an employee's job

performance is not considered discriminatory. His job performance was evaluated by Peek and Beaver, ages 49 and 44, respectively at the time of the 2007 RIF. He was determined to have less diverse skills than the employees retained. Plaintiff had survived prior RIFs, as recently as 2006 but unfortunately did not survive the 2007 RIF although other employees (in the Art Department) over the age of 40 did survive the 2007 RIF.[11] *See*, <u>Stidham v. Minnesota Mining and Manufacturing, Inc.</u>, at 940. It is a fact that "even capable employees are released when an employer is down-sizing." <u>Hutson v. McDonnell Douglas Corp.</u>, 63 F.3d. 771, 779 (8th Cir. 1995). The Court finds no material issue of fact on the matter of intentional age discrimination and plaintiff has failed to show by a preponderance of the evidence that but for his age he would not have been selected for the 2007 RIF.

<u>**PLAINTIFF'S MHRA AGE CLAIM**</u>

Like the ADEA, the MHRA prohibits an employer from discriminating against an employee because of the employee's age. §213.055 (1)(a) R.S.Mo. The standard for establishing an age claim under the MHRA is less demanding than under the ADEA. <u>Baker v. Silver Oak Senior Living Management Co.</u>, 2009 WL 2914159 at *5 *citing* <u>Daugherty v. City of Maryland Heights</u>, 231 S.W.3d. 814 (Mo. 2007). Under the MHRA, in order to show a violation and survive a motion for summary judgment, a plaintiff must establish that [age] was a "contributing factor" to the adverse employment action. <u>Baker</u>, *supra.*; *see also*, <u>Drum v. Leeson Electric Corp.</u>, 565 F.3d. 1071, 1074 (8th Cir. 2009)("To show a violation of the Missouri Human Rights Act (MHRA), Mo.Rev. Stat. §§213.010-.137, Drum must prove that her sex was a contributing factor to her lower salary.") *citing* <u>Daugherty</u>, *supra.* Thus, a plaintiff's age discrimination claim

---

[11] In the 2006 RIF, five of the six employees terminated were over the age of 40 but younger than plaintiff.

under the MHRA will survive summary judgment if there is a genuine issue of material fact as to whether his/her age was a contributing factor in the defendant's termination decision; and the Court "must determine whether the record shows two plausible, but contradictory, accounts of the essential facts and the `genuine issue' in the case is real, not merely argumentative, imaginary, or frivolous." Daugherty, 231 S.W.3d. at 820 *citing* ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp., 854 S.W.2d. 371, 376 (Mo. 1993); *see also*, EEOC v. Con-Way Freight, Inc., 2009 WL 1688230, *7 (E.D.Mo. 2009) *citing* Daugherty, *supra.*; Forrest v. Barnes Jewish Hospital, 2009 WL 877716, *12 (E.D.Mo. 2009) *citing* Daugherty, *supra.*

For all the reasons cited above, and in light of the Court's determination that there is no genuine issue as to whether age was a "but-for" cause of Clark's lack of training, high-speed computer, software access, and selection for the 2007 RIF, it follows that there is no question for a jury about whether age was a contributing factor. The record does not show two (2) plausible but contradictory accounts of the essential facts but instead shows that the "genuine issue" in this case is "merely argumentative".

Clearly, plaintiff disagrees with Matthews' business decisions, including but not limited to choice of artists working on primary packaging artwork and those working on basic corrugated packaging artwork, as well as computer and software distribution among the employees, but absent a showing of age discrimination, Matthews' decisions are not subject to judicial review. It is not unlawful for an employer to make decisions or even carry out "unsound business practices, as long as these decisions are not the result of discrimination based on an employee's membership in a protected class." Cooney, et. al. v. Union Pacific Railroad Co., 258 F.3d. 731, 735-36 (8th Cir. 2001) *quoting* Evers, at 959.

Having found that there is no material issue of fact as to whether age was a "but-for" cause of plaintiff's lack of training, high-speed computer, certain software, and selection for the 2007 RIF, and having found that age was not a contributing factor in any of the alleged adverse employment actions, the Court finds that defendant is entitled to summary judgment on plaintiff's ADEA and MHRA claims as a matter of law.

Dated this   30th   day of October, 2009.

UNITED STATES DISTRICT JUDGE