IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| EDDY CLARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 4:07-cv-2027 (SNL) |
| vs. | ) |
| | ) |
| MATTHEWS INTERNATIONAL | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF HIS MOTIONS IN LIMINE

Comes Now Plaintiff, Eddy Clark ("Clark"), by and through counsel, and for his

Memorandum in Support of His Motions In Limine, states:

### I.  Matthews May Not Argue To The Jury A Standard Other Than The "Contributing Factor" Standard

"The law is clear that the MHRA "safeguards are not identical to the federal

standards and can offer greater discrimination protection." *EEOC v. Con-Way Freight,*

*Inc.,* 2010 U.S.App. Lexis 19638 (8th Cir. 2010). In particular, the MHRA protects

against "any unfair treatment based on ...age...as it relates to employment." *Daugherty v.*

*The City of Maryland Heights,* 231 S.W.3d 814, 819 (Mo. 2007). Further, Missouri

Courts have explicitly rejected the federal burden-shifting analysis and the ADEA's more

stringent "but-for" test. *Hill v. Ford Motor Co.,* 277 S.W.3d 659, 664-665 (Mo. 2009).

Rather, to succeed at trial under the MHRA, Clark must simply show that his age was a

"contributing factor" in Matthews' decision to terminate him. See, *Daugherty,* 231

{00028717.DOC}1

S.W.3d at 820. The 8th Circuit Court of Appeals further confirmed this point in the ruling

upon the appeal of the instant matter. It stated:

> Under the MHRA...Clark is not required to prove that age
> was the "but for" cause of Matthews's adverse employment
> actions. According to the Supreme Court of Missouri,
> "[n]othing in [the] statutory language of the MHRA
> requires a plaintiff to prove that discrimination was a
> substantial or determining factor in an employment
> decision; if consideration of age . . . contributed to the
> unfair treatment, that is sufficient." *Daugherty v. City of
> Md. Heights*, 231 S.W.3d 814, 819 (Mo. 2007). The
> Missouri Court of Appeals has defined a "contributing
> factor" in this context as one "that contributed a share in
> anything or has a part in producing the effect." *Williams v.
> Trans State Airlines*, 281 S.W.3d 854, 867 (Mo. Ct. App.
> 2009) (internal quotation marks omitted). Recent Supreme
> Court of Missouri case law supports this definition.
> *Fleshner v. Pepose Vision Inst.*, 304 S.W.3d 81, 94 (Mo.
> 2010) (noting that "cases involving . . . the MHRA . . . turn
> on whether an illegal factor played *a role* in the decision to
> discharge the employee" (emphasis added)). Essentially, as
> we noted in our prior opinion, "the difference between the
> ADEA and the MHRA is that the former requires that age
> must have been 'the reason' for the adverse employment
> action, while the latter merely requires that age was 'a
> reason' for the action." *Clark*, 628 F.3d at 472; see also
> *Baker*, 581 F.3d at 689-90 (noting that the Supreme Court
> of Missouri has "held that the MHRA is less demanding
> than the ADEA").

> *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 398 (8th Cir. Mo. 2011).

WHEREFORE, Plaintiff requests that the Court order that Matthews may not

argue or imply any standard other than the "contributing factor" standard.

## II.    Evidence from 2000 Through January, 2007 Is At Issue

The Court of Appeals held: "Clark's MHRA claim survives summary judgment if

there is a triable issue of fact regarding whether Clark's age played a part in **producing**

**his inability to become a primary-packaging designer or his ultimate termination,**

even if it is apparent that Clark's age was not a substantial, determining, or but-for cause of these employment decisions." *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 399 (8th Cir. Mo. 2011, emphasis added).

As the Court of Appeals confirmed that relevant facts include the limitations on Clark's becoming a primary packaging designer, Clark intends to put into evidence the history of the division of the art department teams into three age segregated groups, the Purple Team (primary packaging), The Red Team and the Blue Team (corrugated packaging), which began in 2000. Further, Clark intends to put into evidence the inconsistent treatment the various teams experienced, such as the Purple Team, with employees primarily under 40, receiving state of the art computers, and the Red team in comparison receiving the older model computers.

WHEREFORE, Plaintiff requests that the Court order that Matthews may not argue or imply that any conduct by Defendant prior to the termination event in January 2007 (from 2000 to January, 2007) is irrelevant to matters before the jury.

### III.    Matthews May Not Claim The 2006 Terminations are Separate from the 2007 Terminations

The 8th Circuit Court of Appeals, when addressing the instant case, found: "The terminations for the RIF relevant to this case occurred from August 18, 2006, through January 31, 2007." *Clark v. Matthews Int'l Corp.,* 628 F.3d 462, 466 (8th Cir. Mo. 2010). Clark intends to raise the 2006 terminations.

WHEREFORE, Plaintiff requests that the Court order that Matthews may not argue or imply that any termination related to a RIF in 2006  is not relevant to the termination event in January 2007.

**IV.    Clark May Submit Evidence through the Use of Deena Zadylak and
Kerry Beaver's Depositions Without Said Individuals Being Present**

Rule 32(a)(1) provides at trial a deposition may be used against a party when (A)
the party was present and represented at the deposition; (B) it is used to the extent
permitted under the Federal Rules of Evidence, and (C) the use is allowed under Rule
32(a)(2) though (8). There is no dispute Matthews was represented by counsel during the
depositions at issue.

The deposition of Deena Zadylak deposition of a Rule 30(b)(6) corporate
designee. As a result, Rule 32(a)(3) is also applicable. It provides "An adverse party may
use for any purpose the deposition of a party of anyone who, when deposed, was the
party's officer, director, managing agent or designee under Rule 30(b)(6) or 21(a)(4).

Further, both Kerry Beaver and Deena Zadylak live more than 100 miles from the
place of hearing. Zadylak resides in North Huntington, Pennsylvania (outside of
Pittsburgh). (Exhibit 1) Beaver resides in Germantown, Tennessee. (Exhibit 2). Zadylak
lives approximately 600 miles away. (Map, Ex. 3). Beaver lives approximately 300 miles
away. (Ex. 4). Wherefore, Rule 32(a)(4) is applicable for both witnesses. It provides: "a
party may use for any purpose the deposition of a witness, whether or not a party, if the
court finds:…(B) that the witness is more than 100 miles from the place of the hearing or
trial is outside the United states, unless it appears that the absence was procured by the
party offering the deposition."

In addition to the trial testimony, Plaintiff may also use the deposition exhibits
testified to by Zadylak and Beaver. See. e.g. *Amarin Plastics, Inc. v. Maryland Cup
Corp.,* 946 F.2d 147, 153 (1st Cir. 1991).

{00028717.DOC}4

WHEREFORE, Plaintiff requests that the Court order that Plaintiff may use for any purpose the depositions of Kerry Beaver and Deena Zadylak, and may further submit the exhibits from said dispositions into evidence without Zadylak and Beaver being present.

### V.     Documents Produced By Matthews Labeled "MIC-EDC" Are Matthews' Corporate Documents Kept in The Ordinary Course of Business Which May Be Offered Into Evidence As Business Records.

During the course of the deposition of Rule 30(b)(6) corporate representative Zadylak, counsel for Mathews stipulated that the documents produced with the markings "MIC-EDC" with numbers following said markings are actual and standard corporate documents kept in the ordinary course of business (with the exception of documents received during the course of litigation form Clark's other employers) (Zadylak dep. Ex. 1, pp. 6-8). During the course of her deposition, Ms. Zadylak testified as to the documents (which are primarily personnel files and documents contained therein). Further, deponents Randall Peek and Kerry Beaver testified as to those documents in the file which they signed or reviewed. When the testimony concerning said records is taken as a whole, the documents marked MIC-EDC (with the exception of records received from businesses other than Matthews) are business records which comply with the business records exception to the U.S. hearsay rule, based on Rule 803(6) of the Federal Rules of Evidence, for they are made at or near the time of the dates stated in the records, or from information transmitted by, a person with knowledge, kept in the course of a regularly conducted business activity, as the regular practice of that business activity to make the memorandum, report, record or data compilation.

{00028717.DOC}5

WHEREFORE, Plaintiff requests that this Court issue an order providing that the documents produced by Matthews with the markings "MIC-EDC" with numbers following said markings (with the exception of documents received during the course of litigation form Clark's other employers) are documents which comply with the Rule 803(6) of the Federal Rules of Evidence Business Records Exception, which Plaintiff may enter into evidence.

### VI.    Matthews May Not Raise "Same Decision" Defenses

Matthews claims multiple affirmative defenses, a majority of which make some variation of the defense that it considered a factor other than age and would have made the same decision to discharge Clark regardless of discriminatory motive. See Am. Answer, ¶¶ 41, 42, 44, 47. Such "same decision" defenses are not applicable under the MHRA. See, *McBryde v. Ritenour School District*, 207 S.W.3d 162, 172 (Mo.App. E.D. 2006). Indeed, as detailed above, Clark is entitled to judgment in his favor if he can prove by direct or circumstantial evidence that his age was a contributing factor for Matthews' actions, regardless of whether other factors also exist. See, *Stanely,* 263 S.W.3d at 804.

WHEREFORE, Clark requests that this Court issue an order prohibiting Matthews from asserting or arguing that in the event it establishes any non-discriminatory reasons for Clark's termination that said evidence may solely be used to preclude a finding in favor of Clark.

### VII.    Matthews May Not Argue After Acquired Evidence Limits Clark's Damages.

During the course of discovery, Matthews claimed that after it terminated Clark it discovered that Clark did not complete a college degree. It amended its Answer to include an affirmative defense (¶ 37), which stated: "For further answer and affirmative

{00028717.DOC}6

defense, Matthews International states that after-acquired evidence of Plaintiff's misconduct limits the damages that plaintiff may recover." <u>Said defense is not based on any language found in the MHRA</u>. Yet, Clark anticipates that Matthews may still attempt to argue that after it discriminated against Clark it learned of the inconsistency in Clark's employment application and that it would have fired Clark on said grounds, and damages therefore should be curtailed based upon such discovery.

Missouri law is clear that an employee who is wrongfully terminated is entitled to reinstatement with *full* back pay. *See, e.g.*, *Stovall v. Civil Service Comm'n of City of St. Louis*, 636 S.W.2d 364, 367-68 (Mo. App. 1982). An improperly dismissed employee is entitled upon reinstatement to recover his lost back pay from the date of termination to the date of his reinstatement. *See Edmonds v. McNeal*, 596 S.W.2d 403, 408 (Mo. banc 1980). As the Appeals Court in the instant matter noted:

> Back pay is calculated based upon "the difference between the value of the compensation the plaintiff would have been entitled to had he remained employed by the defendant and whatever wages he earned during the relevant period." *Hartley v. Dillard's, Inc.,* 310 F.3d 1054, 1062 (8th Cir. 2002). Generally, the "relevant period" runs from the date of termination until the date of reinstatement or judgment. *Morgan v. City of St. Louis*, 154 S.W.3d 6, 12 (Mo. Ct. App. 2004; *Nord v. U.S. Steel Corp.*, 758 F.2d 1462, 1472-73 (11th Cir. 1985).
>
> *Clark v. Matthews Int'l Corp.*, 639 F.3d 391, 396 (8th Cir. Mo. 2011).

Missouri Courts do not accept a defense concerning any after acquired evidence with only one exception, when the case concerns a *refusal to hire,* and the employer could show that even if the alleged discrimination had not occurred it would still have refused to hire the employee once a routine check on the employee's application would

{00028717.DOC}7

have automatically revealed the inconsistent statements. *Swyers v. Thermal Science, Inc.*, 887 S.W.2d 655 (Mo. App. E.D.Mo. 1994). The Court of Appeals of the Eastern District subsequently confirmed that no provision of the MCHR "allows for the same decision defense as a bar to recovery against discriminatory behavior by the employer." *McBryde at* 172 (Mo.App. E.D. 2006). In *McBride,* when an employer sought a jury instruction regarding a termination that occurred in May 2003 stating: "Has it been proved by the greater weight of the evidence that defendant would not have extended a new coaching contract for the 2003-2004 school year [the following year] to plaintiff regardless of race?" the *McBride* court confirmed that the MHRA does not allow for such an instruction. It further rejected the defense that the employer may have terminated the employee for business reasons subsequent to the termination event. Id, at 171-172.

WHEREFORE, Clark requests that this Court issue an order prohibiting Matthews from arguing that its alleged after acquired evidence limits the amount of damages that Clark may received in the instant matter; and further prohibiting Matthews from raising facts concerning any alleged after acquired evidence regarding Clark's college degree.

**IX     Matthews May Not Present Evidence Of Affidavits From Prospective Employers Suggesting that It Has No Record Of Clark's Applications**

During the Course of Discovery, Matthews sought and requested documents concerning clark from entities that Clark identified as potential employers from which he sought employment. Matthews  further requested that the entities submit an  "Affidavit For Certified Records." Attached hereto are six of the returned records. (Exhibit 5). The "Affidavit for Certified Records" states:

{00028717.DOC}8

"Before me, the undersigned Notary Public, personally appeared . (Custodian of Records), who, being by me duly sworn, deposes as follows." Ex. 1. The Custodian of Records then goes on to swear that: I am the custodian of records of ____. Attached hereto are ___ pages of records. These ___ pages of records attached hereto were made at or near the time of the occurrence of the matters set forth by, or from information, transmitted by, a person with knowledge of those matters, said records are kept by _____ in the course of regularly conducted business, and it is in the regular course of business of _____ for an employee or representative to prepare said records. The records attached hereto are the original of exact duplicates of the original. These are all the records and include regular entries together with all correspondence and documents related to Eddy Clark. I hereby certify under penalty of perjury under the laws of the United states of America that the foregoing is true and accurate.

In the attached Exhibit 5, many entities returned certificates where the custodian added "0" to the number of pages, and signed the affidavit.

Said affidavits are hearsay if they are to be used to suggest that Clark did not apply for employment with said entities. Any attempt to offer said affidavits into evidence would be attempted use of an out-of-court statement without the benefit of cross-examination. They are therefore inadmissible unless they fall within one of the exceptions provided for by statute, or the Federal Rules of Evidence. *See* Fed. R. Ev. 802.

Further, on their face, the affidavits do not suggest that Clark did not apply for employment with the entities at issue. In the present case, the affidavits do not state that the affiants for each of the businesses have knowledge whether employments of applications are kept by the businesses in question, nor do they state that if applications are kept, how long they are kept. The affiant does not swear that if Clark applied for a job that that such records would normally be maintained in the ordinary course of business.

There is no indication from any of the individuals providing the affidavits that their addition of "0" actually meant that Clark never applied to for work at their business. Further, there no indication whether the businesses' records at issue were destroyed, either purposely or accidently, since Clark applied, or whether rejected applications are saved by the prospective employer.

Defendant may try to argue that the affidavits are admissible pursuant to Federal Rule of Evidence 803(7), which provides: Evidence that a matter is not included in the memoranda reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate a lack of trustworthiness.

While Rule 803(6) provides that the foundation for the admission of business records may be shown "by certification that complies with Rule 902(11), Rule 902( 12), or a statute permitting certification, Rule 803(7) does not contain such a provision. Therefore, on its face Federal Rule of Evidence 803(7) *requires* in-court testimony to lay the appropriate foundation for the admission of this evidence.

The Eighth Circuit and other Courts have interpreted Rule 803(7) to require the proponent to establish the same foundation as is required for the admission of business records pursuant to Rule 803(6). *See Kaiser Aluminum & Chem.. Corp. V Ill. Cent. Gulf R.R. Co.,* 615 F.2d 470,476 (8thCir. 1980) ("Rule 803(7) provides that evidence of the absence of an entry in records *regularly kept* is admissible as affirmative proof of the nonoccurrence or nonexistence of *a matter normally recorded.")* emphasis added; *see*

{00028717.DOC}10

*also Brodersen v. Sioux Valley Memorial Hosp.,* 902 F.Supp. 931, 953 (N.D. IA 1995)
(proponent of evidence under Rule 803(7) must establish: 1) the record was made in the
regular course of business; 2) the record was kept in the regular course of business; 3) it
was the business's practice to make such a record; and, 4) the record was made by
someone with knowledge of the transaction). Further, the proponent of such evidence
must demonstrate that the business in question takes these actions in the normal course of
its *own* business, not that such actions are industry standard or common among
employers. *Brodersen,* 902 F.Supp. at 953.

Finally, Rule 803(7) provides that evidence of the absence of a business record is
not admissible if, "the sources of information or other circumstances indicate a lack of
trustworthiness." Rule 803(7)'s exception to the hearsay rule is grounded upon the
probability of the records' accuracy. *U.S. v. Rich,* 580 F.2d 929, 938 (9th Cir. 1978). In
order to merit judicial reliance on the contents - or lack thereof - of business records, their
proponent must establish their trustworthiness. *Id.* In the present case, the affidavits at
issue cannot be trusted to establish that Clark failed to apply to each of the listed
employers. There is no law requiring businesses to keep records of applications. Further,
there is no evidence that it is common for businesses to keep such records. If applications
are kept, the amount of time businesses keep employment applications varies greatly.
Companies often only keep applications for 30 and 60 days. The variations in the length
of time each business keeps its employment applications is just one of many possible
explanations as to why Clark's employment application could not be found. Given the
fact that individual businesses have widely different retention policies for employment

applications, the affidavits as drafted cannot be trusted to demonstrate that Clark did not apply for work.

The Defendant likely intends to use the Affidavits to attempt to demonstrate that Clark did not mitigate his damages, and to attack Clark's credibility through impeachment. Absent the right to cross examine the witnesses identified in the Affidavits, the Plaintiff will be severely prejudiced by the introduction of such hearsay evidence regarding his search for employment, which is at best ambiguous and at worst misleading.

WHEREFORE, Clark requests that the Court exclude from evidence each of the Defendant's Affidavits For Certified Records, prohibit any attempt to impeach Clark with those affidavits, and to prohibit any assertion by the Defendant that a business claims that either Clark did not apply or that the business could not find Clark's application.

## X.  Matthews May Not Address The Issue Of Whether Clark Received Unemployment Insurance To Deduct From Damages

Unemployment compensation does not serve to indemnify employers from tort liability, but is designed to "alleviate adversity and promote the public welfare." *Burens v. Wolfe Wear-U-Well Corp.*, 236 Mo. App. 892, 158 S.W.2d 175, 179 (Mo. App. 1942). The same is true for liability under the MHRA. *Echols v. City of Riverside,* 332 S.W.3d 207, 212-213 (Mo. Ct. App. 2010). The *Echols* Court succinctly stated: "It would be anomalous, now that the employer has been found guilty of discharging Echols in retaliation, to allow the employer to benefit from a state mandated unemployment insurance fund." *Echols v. City of Riverside,* 332 S.W.3d 207, 212-213 (Mo. Ct. App.W.D. 2010), citing, *Beck v. Edison Bros. Stores, Inc.*, 657 S.W.2d 326, 331 (Mo. App. E.D. 1983).

WHEREFORE, Clark requests that the Court exclude from evidence records concerning Clark's unemployment benefits.

/s/ *Joshua M. Avigad*
Lawrence P. Kaplan
Joshua M. Avigad
KAPLAN ASSOCIATES, LLC
Attorneys for Plaintiff
101 South Hanley Road
Suite 1225
St. Louis, Missouri 63105
Telephone:  314.863.2929
Facsimile:  314.863.9777

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of August, 2011, the foregoing was filed electronically with the Clerk of Court to be served on all parties by operation of the Court's electronic filing system.

/s/ *Joshua M. Avigad*

{00028717.DOC}13